IN THE CIRCUIT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

AUDRA RUYTER  :

    Plaintiff  :

v.  :  Case No.:

MARYLAND CVS PHARMACY, LLC  :

    Defendant  :

Serve on:  :

The Corporation Trust Incorporated
351 West Camden Street
Baltimore, Maryland 21201

    Registered Agent

## COMPLAINT

COMES NOW the Plaintiff, AUDRA RUYTER, by and through her counsel, RICHARD A. FINCI, Esquire, BENJAMIN C. MARCOUX, Esquire, and the Law Offices of HOULON, BERMAN, BERGMAN, FINCI, LEVENSTEIN & SKOK, LLC, and files this Complaint against the Defendant, CVS CAREMARK CORPORATION, and as grounds therefore respectfully represents unto this Honorable Court as follows:

### The Parties, Jurisdiction and Venue

1. Plaintiff, AUDRA RUYTER (hereinafter the "Plaintiff") is an adult citizen of the State of Maryland, and was a long-time employee of the Defendant, CVS CAREMARK CORPORATION (hereinafter the "Defendant").

2. Defendant is a corporation with its principal offices in Rhode Island, but which regularly conducts business in this State, and has, according to its own website, approximately 170 stores in this State.

3. Jurisdiction is proper pursuant to Annotated Code of Maryland (2013 Repl. Vol.), Courts and Judicial Proceedings Article, Section 6-103.

4. Venue is proper pursuant to Annotated Code of Maryland (2013 Repl. Vol.), Courts and Judicial Proceedings Article, Section 6-201.

### Facts Common to All Counts

5. The Plaintiff was a long-time employee of the Defendant's until her abrupt termination on or about December 11, 2013. Prior to that date, the Plaintiff had been a loyal, hard-working and diligent employee, having worked for the Defendant corporation for approximately thirteen (13) years. At no time during her employment with the Defendant was the Plaintiff under contract, but was, at all times, an at-will employee.

6. At all times during her long tenure with the Defendant, Plaintiff performed her duties fully and competently, most recently in her position as a front-of-store supervisor at Store #1735, in Glen Burnie, Maryland, earning Seventeen Dollars and Nine Cents ($17.09) per hour.

7. Prior to that position, Plaintiff had served the Defendant corporation loyally as an assistant manager. In 2010, Plaintiff was approached by Mr. Andy Kiler, a district manager, and asked to become a store manager at one of the Defendant's Baltimore County locations. When she declined that offer, she was demoted to her most recently held position of front-of-store supervisor. Despite this treatment, Plaintiff remained a loyal employee of the Defendant corporation. Plaintiff retained her hourly pay rate despite her demotion, which was substantially higher than other supervisors employed by the Defendant.

8. Plaintiff has previously filed several worker's compensation claims against the Defendant, the most recent in or about 2012. These claims have been paid out for injuries Plaintiff suffered while working for the Defendant. In addition, Plaintiff was a part of a class

action law suit, settled in 2012, which awarded damages to the Plaintiff class for overtime which had not been properly paid.

9. In 2013 the general management duties of Store #1735 were transferred to a new employee, Ms. Bianca Sloan, and Plaintiff and the Ms. Sloan began to clash over Plaintiff's hours and overtime pay. As a result, Plaintiff requested a transfer to a different location, Store #4017 in Pasadena, Maryland. Her request was granted, and her last day of work at Store #1735 was scheduled for October 26th, 2013.

10. On October 17th, 2013, Plaintiff left for her previously planned and scheduled vacation, and returned to work the night shift on October 23rd, 2013. On her return, she was contacted by a district manager of the Defendant corporation, Andy Kiler, who questioned her about a deposit of Three Thousand, Three Hundred and Sixty-seven Dollars and Eighty-seven Cents ($3,367.87) which had apparently gone missing from October 22nd, 2013, while the Plaintiff was away on vacation. Plaintiff made it clear that she had not been at work for approximately a week, and knew nothing about any missing deposit.

11. On October 26th, 2013, the Plaintiff transferred to Store #4017 in Pasadena as planned. On October 31, 2013, she spoke with Mr. Kiler again, and asked if they had found the missing deposit. Mr. Kiler indicated they had not, and that Plaintiff would be hearing from Defendant's loss prevention officer, Mr. Logerhan.

12. Plaintiff heard nothing further from the Defendant or any of its employees regarding the missing deposit until November 6, 2013, when she was working as front-of-store supervisor at Store #4017. On that evening, she was approached by Mr. Logerhan and another employee of the Defendant, and was escorted to an upstairs office to discuss the missing deposit money.

13. Once in the office upstairs, and behind a closed door, Plaintiff was interrogated extensively by Mr. Logerhan, who repeatedly accused Plaintiff of stealing the missing deposit. During the interrogation, Plaintiff was detained against her will and prevented from leaving until the questioning by Defendant's employees was complete. Throughout the lengthy interrogation, Plaintiff maintained her innocence, despite Mr. Logerhan's insistence that the alleged theft was captured on security footage. When Plaintiff repeatedly requested to see the alleged footage, she was told she could see the footage, but despite her multiple requests, it has never been shown to her.

14. Plaintiff was eventually allowed to return to work, but was shaken and upset by the repeated accusations of Mr. Logerhan, and his insistence that she was lying. As a result of her being so distraught, she was sent home from work for the evening. In addition to the distress the Plaintiff underwent during and immediately following her interrogation by employees of the Defendant, she has continued to suffer emotionally and psychologically.

15. On November 7, 2013, Plaintiff was again contacted by Mr. Logerhan, who asked if she had anything further to add to the investigation into the missing deposit. Plaintiff again indicated that she had nothing to do with the missing deposit money, and had no knowledge of it.

16. Plaintiff heard nothing further from Mr. Logerhan, or any other employee of the Defendant, and assumed that the incident was over, until on December 11, 2013, she was again approached by Mr. Kiler at approximately nine o'clock, p.m., and handed a document titled "Counseling," a copy of which is attached hereto as Exhibit A. Mr. Kiler informed her that she was terminated.

17. Subsequent to her termination by the Defendant, on or about February 16, 2014, the Plaintiff filed for unemployment insurance benefits before the Maryland Division of Unemployment Insurance.

18. Evidently in response to that application, the Defendant informed the Maryland Division of Unemployment Insurance of their false allegations against the Plaintiff.

19. The Defendant failed to provide any additional information to substantiate their allegations as requested by the Division of Unemployment Insurance, despite an apparent request to do so by the Division.

20. Because of the false statements publicized by the Defendant, the Plaintiff has suffered damage to her reputation, damage to her standing in the community, personal humiliation, mental anguish and other suffering, including difficulty securing further employment.

### COUNT I
### (Wrongful Termination)

21. Plaintiff hereby incorporates by reference each and every allegation set forth in Paragraphs 1-20 with the same force and effect as if fully set forth herein.

22. The "Counseling" document referenced above contains numerous misstatements, including that the Plaintiff offered to repay the lost deposit, that she offered to repay the Defendant for the lost deposit money, and that she refused to cooperate in the investigation. Further, it is dated November 19, 2013 and lists a "follow-up review date" of November 25, 2013, but was only provided to Plaintiff on the day of her termination, December 11, 2013.

23. The alleged grounds for Plaintiff's termination, listed on the "Counseling" document, are that she was under suspicion of stealing the missing deposit money, that she did

not follow proper deposit procedures, and that she refused to participate in the Defendant's investigation.

24. All of these alleged grounds are pretextual. In actuality, the Plaintiff was terminated in retaliation for her previous disputes with the Defendant corporation regarding her hourly wage and overtime pay, and because of her relatively high hourly wage as a supervisor.

25. Plaintiff's termination was wrongful, and without any lawful cause whatsoever, as it resulted solely from her rightful exercise of her rights to pursue compensation for her injuries, from her pursuit of overtime pay owed to her, and from her efforts to earn a living wage.

26. The avowed public policy of the State of Maryland is to permit citizens to pursue their legal rights through litigation and to ensure that they may be paid a fair wage for their labor.

27. The actions of the Defendant corporation are violative of a clear mandate of public policy, specifically that Defendant is in violation of the Annotated Code of Maryland (2013 Repl. Vol.), Labor and Employment Article, Section 9-1105.

28. Defendant's termination of the Plaintiff was deliberate, malicious, willful and intentionally calculated to inflict harm upon her.

29. As a result of her wrongful termination by the Defendant, the Plaintiff has been left without employment, deprived of her annual salary of approximately Forty-two Thousand Dollars ($42,000.00) plus benefits and other renumeration, has suffered damage to her reputation and has been otherwise damaged.

WHEREFORE, Plaintiff AUDRA RUYTER demands judgment against the Defendant, CVS CAREMARK CORPORATION in the sum of Forty-two Thousand Dollars ($42,000.00) in compensatory damages and One Hundred Thousand Dollars ($100,000.00) in punitive damages, with interest and costs.

## COUNT II
### (False Imprisonment)

30. Plaintiff hereby incorporates by reference each and every allegation set forth in Paragraphs 1-29 with the same force and effect as if fully set forth herein.

31. As alleged above, the Defendant's employees detained Plaintiff in an upstairs office, by refusing to allow her to return to work or leave the room.

32. Such action on the part of Defendant's employees caused the Plaintiff to be unlawfully deprived of her liberty to leave.

33. Defendant's employees detained the Plaintiff improperly, falsely alleging that she participated in a theft.

34. The Plaintiff was unlawfully detained by Defendant's employees for more than an hour.

35. As a result of the Defendant's actions, Plaintiff suffered damages from being unlawfully detained against her will for an extended period of time.

36. All of the behavior of the employees of the Defendant, taken together, constitutes and demonstrates actual malice.

WHEREFORE, Plaintiff AUDRA RUYTER demands judgment against the Defendant, CVS CAREMARK CORPORATION in the sum of Twenty Thousand Dollars ($20,000.00) in compensatory damages and One Hundred Thousand Dollars ($100,000.00) in punitive damages, with interest and costs.

## COUNT III
### (Defamation)

37. Plaintiff hereby incorporates by reference each and every allegation set forth in Paragraphs 1-36 with the same force and effect as if fully set forth herein.

38. As alleged above, Defendant made defamatory statements regarding the Plaintiff, namely that she engaged in a theft of the missing deposit money.

39. At the time the Defendant made these statements, they were demonstrably false and/or were made by the Defendant, through its representatives, with a reckless disregard for the truth or falsity of the statements.

40. As a result of the defamatory statements made by the Defendant, the Plaintiff has suffered damages, to her reputation, to her good standing in the community, to her mental well-being, and to her ability to find gainful employment elsewhere, among other damages.

WHEREFORE, Plaintiff AUDRA RUYTER demands judgment against the Defendant, CVS CAREMARK CORPORATION in the sum of Fifty Thousand Dollars ($50,000.00) in compensatory damages and One Hundred and Fifty Thousand Dollars ($150,000.00) in punitive damages, with interest and costs.

## JURY TRIAL REQUEST

Plaintiff hereby requests a trial by jury as to all applicable counts.

Respectfully submitted,

HOULON, BERMAN, BERGMAN,
FINCI, LEVENSTEIN & SKOK, LLC

_____
RICHARD A. FINCI, Esquire

_____
BENJAMIN C. MARCOUX, Esquire
7850 Walker Drive, Suite 160
Greenbelt, Maryland 20770
P: (301) 459-8200 | F: (301) 459-5721
finci@houlonberman.com
bmarcoux@houlonberman.com