UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

AUDRA RUYTER,

    Plaintiff,

    v.

MARYLAND CVS PHARMACY, LLC,

    Defendant.

Civil Action No. TDC-14-2541

**MEMORANDUM OPINION**

Plaintiff Audra Ruyter is a former 13-year employee of Defendant Maryland CVS Pharmacy, LLC ("CVS"). After CVS terminated her employment in December 2013, Ruyter filed suit for wrongful termination (Count I), false imprisonment (Count II), defamation (Count III), and retaliation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (2012) (Count IV). Presently pending is CVS's Motion to Dismiss Ruyter's claims for wrongful termination and defamation. *See* ECF No. 12. The Motion is fully briefed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the following reasons, the Motion is GRANTED as to the wrongful termination claim and DENIED as to the defamation claim.

**BACKGROUND**

Unless otherwise noted, the following facts are presented as alleged in the First Amended Complaint. *See* Pl.'s 1st Am. Compl., ECF No. 4. Ruyter worked for CVS for 13 years. *Id.* ¶ 5. In 2010, Ruyter was an assistant manager at CVS when Andy Kiler, a district manager, asked her to become store manager at a CVS store in Baltimore County, Maryland. *Id.* ¶ 7. After she

declined the offer, Ruyter was demoted to working as a front-of-store supervisor at CVS Store #1735 in Glen Burnie, Maryland. *Id.* ¶¶ 6–7. In 2012, Ruyter, who had previously received worker's compensation for various claims she had filed, joined a class action suit against CVS that, after settlement, awarded damages for unpaid overtime wages. *Id.* ¶ 8.

In 2013, Bianca Sloan became the manager of Store #1735. *Id.* ¶ 9. Sloan and Ruyter began to clash over Ruyter's hours and overtime pay, prompting Ruyter to request a transfer to CVS Store #4017 in Pasadena, Maryland. *Id.* CVS granted her request to transfer stores, and Ruyter's last day at Store #1735 was scheduled to be October 26, 2013. *Id.* In the meantime, Ruyter left for vacation on October 17, 2013. *Id.* ¶ 10. When she returned to work the night shift on October 23, 2013, Kiler questioned her about a $3,367.87 deposit that went missing on October 22, 2013, while she was away. *Id.* Ruyter denied knowing anything about the missing deposit and transferred to Store #4017 on October 26, 2013, as planned. *Id.* ¶¶ 10–11. On October 31, 2013, Kiler and Ruyter spoke again about the missing deposit. *Id.* ¶ 11. Kiler told Ruyter that she would be hearing from Mr. Logerhan, CVS's loss prevention officer. *Id.*

On November 6, 2013, Logerhan arrived at Store #4017, took Ruyter to an upstairs office along with another employee, and extensively questioned her about the missing deposit. *Id.* ¶¶ 12–13. Logerhan repeatedly accused Ruyter of stealing the missing deposit and insisted that the theft was caught on a security camera, but he did not show her the video. *Id.* ¶ 13. Ruyter, who maintained her innocence, was detained throughout the encounter and was prevented from leaving the office until Logerhan completed his questioning. *Id.* Distraught, Ruyter was sent home for the evening. *Id.* ¶ 14. Logerhan contacted Ruyter again the following day to ask if she had any additional information to add to the investigation. *Id.* ¶ 15. Ruyter again disavowed any knowledge of or involvement with the missing deposit. *Id.*

On December 11, 2013, Kiler fired Ruyter and gave her a document entitled "Counseling," id. ¶ 16, which Ruyter attached to the Complaint, see 1st Am. Compl. Ex. A, ECF No. 4-1. The document explained that Ruyter can be seen on security camera footage the morning of October 25, 2013 preparing the deposits from the previous night. 1st Am. Compl. Ex. A. The footage showed Ruyter taking something from a cash register drawer, turning her back to the camera, and then placing the item in her pants. Id. After looking back and forth, Ruyter left to take the October 23 and October 24 deposits to the bank. Id. This was the only suspicious behavior that CVS found in the footage. Id. The "Counseling" document explained that deposit procedures were not being followed because, among other reasons, deposits were not taken to the bank on a daily basis, the deposit logs were incomplete, and the deposit log for October 26, 2013 could not be located. Id. It also notes that Ruyter "refused to participate in the investigation by providing a statement" and states that "all employees are expected to cooperate with any investigation regarding the non-compliance of [deposit] procedures." Id. Under the section labeled "Corrective Action(s)," the document states that Ruyter was "terminated for suspicion of stealing the deposit, she did not follow proper deposit procedures and she refused to participate in the investigation." Id.

After her termination, Ruyter applied for unemployment insurance benefits with the State of Maryland Department of Labor, Licensing and Regulation Division of Unemployment Insurance ("Unemployment Insurance Division" or the "Division") on February 16, 2014. 1st Am. Compl. ¶ 17. According to Ruyter, "Evidently in response to that application, the Defendant informed the Maryland Division of Unemployment Insurance of [its] false allegations against the Plaintiff." Id. ¶ 18. To support this allegation, Ruyter attached her unemployment insurance determination letter, which reads:

> The claimant was discharged from employment with Maryland CVS Pharmacy LLC . . . allegedly for failing to continue participating in an investigation and for stealing a deposit.  However, the employer failed to provide additional information as requested. . . . As a result, it is determined that the circumstances surrounding the separation do not warrant a disqualification under Section 8-1002 or 8-1003 of the Maryland Unemployment Insurance Law.  Benefits are allowed, if otherwise eligible.

1st Am. Compl. Ex. B., ECF No. 4-2. Ruyter alleges that she suffered damage to her reputation and standing in the community as a result of CVS's disclosure to the Unemployment Insurance Division. 1st Am. Compl. ¶ 20.

On May 1, 2014, Ruyter filed suit against CVS in the Circuit Court for Prince George's County, Maryland, asserting claims for wrongful termination, false imprisonment, and defamation. *See* ECF No. 2. On July 24, 2014, she amended her Complaint to include a claim for retaliation in violation of the FLSA, *see* ECF No. 4, after which, on August 11, 2014, CVS removed the action to this Court, *see* ECF No. 1. On August 18, 2014, CVS moved to dismiss Ruyter's wrongful termination and defamation claims. *See* ECF No. 12. Ruyter opposed the Motion. *See* ECF No. 15.

## DISCUSSION

I. **Legal Standard**

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009). A claim is plausible when the facts pled allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268

(1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). In addition, when deciding a Rule 12(b)(6) motion, the court may consider the complaint and any attached documents "integral to the complaint" without converting the motion to a Rule 56 motion for summary judgment. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

## II.   Wrongful Termination

In Count I, Ruyter alleges that she was wrongfully terminated in retaliation for her disputes with CVS over worker's compensation and overtime pay. 1st Am. Compl. ¶¶ 24–25. CVS, in turn, asserts that Ruyter cannot bring a wrongful termination claim when there is an available statutory remedy. CVS argues that, because Ruyter can bring a claim for retaliation under the FLSA, she cannot also bring a claim for wrongful termination. Def.'s Mem. Supp. Partial Mot. Dismiss Counts I & III 1st Am. Compl. ("Def.'s Mem.") at 5–6, ECF No. 12-1.

Maryland law recognizes wrongful termination claims, known as abusive discharge claims, for at-will employees whose termination "contravenes some clear mandate of public policy." *Adler v. Am. Standard Corp.*, 432 A.2d 464, 473 (Md. 1981). Abusive discharge claims, however, are limited to instances that otherwise would not be vindicated by a statutory remedy. *Makovi v. Sherwin-Williams Co.*, 561 A.2d 179, 180 (Md. 1989). The tort is designed to fill gaps in statutory coverage: When a plaintiff is terminated in a way that violates some public policy, but there is no statute protecting against such conduct, then the plaintiff may bring an abusive discharge claim to remedy the harm. *See Chappell v. S. Md. Hosp. Inc.*, 578 A.2d 766, 770 (Md. 1990) (noting that an abusive discharge claim "will not lie where the public policy sought to be vindicated by the tort is expressed in a statute which carries its own remedy for vindicating that public policy"). When a plaintiff has an available remedy under a federal or

5

state statute, however, there is no need to file a wrongful termination claim, and the plaintiff is precluded from doing so. See id. at 772. In *Chappell*, the court held that a Maryland abusive discharge claim in which the plaintiff alleged wrongful termination in retaliation for reporting violations of minimum wage laws was unavailable because the FLSA provided a statutory remedy. *Id.* at 773–74. Likewise, Ruyter's wrongful termination alleging retaliation for raising a claim of unpaid overtime claim fails because the FLSA provides a statutory remedy for this issue.

Nevertheless, Ruyter relies on *Randolph v. ADT Security Services, Inc.*, 701 F. Supp. 2d 740 (D. Md. 2010), to argue that she can concurrently bring an abusive discharge claim and a retaliation claim under the FLSA. In *Randolph*, the court (Chasanow, J.) concluded that a plaintiff, at the pleading stage, could pursue claims for abusive discharge and retaliation under the FLSA as "alternative theories of recovery." *Id.* at 748. At first blush, *Randolph* appears to spurn the rule outlined in *Adler*, *Makovi*, and *Chappell*. The result in *Randolph* was warranted, however, because the parties, at the time, contested whether the FLSA applied. At the motion to dismiss stage, the employer argued that the employee did not engage in a protected activity when she filed a complaint with a state agency, thereby precluding her from claiming retaliation under the FLSA. *Id.* at 744. The court concluded that the employee had stated a claim for retaliation under the FLSA, *see id.* at 746, and acknowledged that, if the FLSA claim was indeed viable, the employee would not be able to pursue an abusive discharge claim, *see id.* at 748 (citing *Chappell*, 578 A.2d at 772). Later in the case, the court concluded definitively that the employee engaged in a protected activity and was entitled to summary judgment under the FLSA. *See Randolph v. ADT Sec. Servs., Inc.*, No. DKC 09-1790, 2011 WL 3476898, *9 (D. Md. Aug. 8, 2011). The employee therefore could not pursue a claim for abusive discharge. *Id.* at *10.

In contrast, the parties in this case agree that Ruyter has an available remedy under the FLSA for retaliation, provided that she meets her burden of proof. CVS filed an answer to her FLSA claim, *see* Answer 1st Am. Compl. ¶¶ 41–45, ECF No. 13, and does not contest in its Motion to Dismiss her ability to bring a retaliation claim under the FLSA. Even if CVS contested the claim, Ruyter sufficiently states a claim for retaliation under the FLSA because she alleges that she was fired for participating in a class action suit alleging overtime pay violations. *See* 1st Am. Compl. ¶¶ 42–43. As such, she has asserted a *prima facie* case of retaliation under the FLSA, which requires that the plaintiff (1) engaged in an activity protected by the FLSA, (2) suffered an adverse action, and (3) has shown a causal connection between the protected activity and the adverse action. *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008). Because Ruyter may seek relief under the FLSA, her wrongful termination claim is dismissed without prejudice.

### III. Defamation

In Count III, Ruyter alleges that CVS defamed her by reporting to the Unemployment Insurance Division that it suspected her of stealing the missing deposit. 1st Am. Compl. ¶¶ 18, 38–40. CVS argues that these allegations fail to state a claim for defamation. Def.'s Mem. at 8–9. To the extent that Ruyter states a claim, CVS argues that its communications to the Division are privileged because a statute, Md. Code Ann., Lab. & Empl. § 8-105 (West 2015), bars defamation suits predicated on statements made by an employer to the Unemployment Insurance Division. Def.'s Mem. at 9–10.

#### A. Statement of Claim

Because defamation is a common law claim, Maryland law applies. *See Booth v. Maryland*, 327 F.3d 377, 384 (4th Cir. 2003) (applying Maryland law to defamation claim). To

7

plead defamation under Maryland law, the plaintiff must allege that (1) the defendant made a defamatory statement to a third person; (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff was harmed as a result. *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012). For the first element, a defamatory statement "tends to expose a person to public scorn, hatred, contempt, or ridicule, which, as a consequence, discourages others in the community from having a good opinion of, or associating with, that person." *Id.* (citations and internal quotation marks omitted). Under the second element, "a false statement is on that is not substantially correct." *Id.* (citation and internal quotation marks omitted).

Establishing the third element, that a defendant is legally "at fault," requires a showing that the party making the false statement acted negligently or with actual malice. *Hearst Corp. v. Hughes*, 466 A.2d 486, 491–92 (Md. 1983); *Jacron Sales Co. v. Sindorf*, 350 A.2d 688, 698 (Md. 1976). On the fourth element, harm is presumed if the statement was defamatory *per se*, in that the injurious character of the statement is self-evident, and if the plaintiff can demonstrate actual malice. *Hearst Corp.*, 466 A.2d at 493; *Samuels v. Tschechtelin*, 763 A.2d 209, 245 (Md. Ct. Spec. App. 2000). Actual malice is established by showing that the speaker made the statement with actual knowledge that it was false or with reckless disregard for its truth. *Hearst Corp.*, 466 A.2d at 490. If the defamation is *per quod*, in that the fact finder must determine whether the statement is in fact defamatory, the plaintiff must show that the words caused actual damage. *Metromedia, Inc. v. Hillman*, 400 A.2d 1117, 1123 (Md. 1979); *Samuels*, 763 A.2d at 245.

Ruyter has properly alleged the first and second elements. She alleges that CVS told the Unemployment Insurance Division about the "false allegations" against her. *See* 1st Am. Compl. ¶ 18. The determination letter, which Ruyter attached to the Complaint, specifically reveals that

8

CVS notified the Division that it terminated Ruyter for stealing the deposit and for failing to participate in the ensuing investigation. *See* 1st Am. Compl. Ex. B. Ruyter vehemently denied any involvement in the missing deposit, *see* 1st Am. Compl. ¶¶ 10, 13, 15, and states that she was not at the store the night that the deposit went missing, *see id.* ¶ 10. Moreover, because CVS never substantiated the claims, the Division was unable to conclude whether the allegations had merit. *See* 1st Am. Compl. Ex. B.

Ruyter also sufficiently alleges the third and fourth elements. Ruyter's allegation that CVS made the statement "with reckless disregard for [its] truth or falsity," 1st Am. Compl. ¶ 39, is supported by the allegations that, when asked by the Division to corroborate the statement, CVS was unable to do so, *id.* ¶ 19, and that the Division ultimately determined that Ruyter was eligible for benefits, *see* 1st Am. Compl. Ex. B. Because CVS's statement to the Division amounted to defamation *per se*, in that it is self-evident that accusing an employee of stealing from an employer is injurious to that employee's character, she does not have to establish damages. *See Hearst Corp.*, 466 A.2d at 489. Nevertheless, she alleges that she has suffered damages "to her reputation, to her good standing in the community, to her mental well-being, and to her ability to find gainful employment elsewhere." 1st Am. Compl. ¶ 40.

CVS, relying on *Southern Volkswagen, Inc. v. Centrix Financial, LLC*, 357 F. Supp. 2d 837, 844 (D. Md. 2005), argues that Ruyter does not meet this standard because she fails to allege the claim with more particularity. Specifically, CVS contends that Ruyter does not identify who made the defamatory statement, describe the content of the statement, or allege the date and to whom the statement was made. Def.'s Mem. at 8–9. *Southern Volkswagen*, however, does not create the heightened pleading standard that CVS envisions. Rather, the defamation allegations in *Southern Volkswagen* were so inconsistent and vague that the court,

even after finding that the plaintiff had sufficiently stated a claim for defamation, could not determine if the harm met the $75,000 threshold to establish diversity jurisdiction. *See S. Volkswagen*, 357 F. Supp. 2d at 844. Given that concern, the court directed the plaintiff to amend the defamation claim – with specific instructions to include the identity of the speaker, the content of the statements, and an averment of damages, among other things – to resolve the inconsistencies and to establish more clearly whether diversity jurisdiction existed. *See id.* Those instructions are most properly read as part of an effort to clarify a claim that had already been sufficiently pleaded, not to establish a baseline rule for all defamation claims.

Nor is Ruyter's case analogous to the other cases that CVS cites to argue that she fails to state a claim. *See Colfield v. Safeway, Inc.*, No. WDQ-12-3544, 2013 WL 5308278 (D. Md. Sept. 19, 2013); *Velencia v. Drezho*, No. RDB-12-0237, 2012 WL 6562764 (D. Md. Dec. 13, 2012); *Brown v. Ferguson Enters., Inc.*, No. CCB-12-1817, 2012 WL 6185310 (D. Md. Dec. 11, 2012); *Davidson-Nadwodny v. Wal-Mart Assocs., Inc.*, No. CCB-07-2595, 2008 WL 2415035 (D. Md. June 3, 2008). The plaintiffs in those cases had alleged that the defendants made defamatory statements in a less specific way than in the present case. *See, e.g., Cofield*, 2013 WL 5308278, at *7 (plaintiff failed to allege any defamatory statements by the particular defendant seeking dismissal); *Velencia*, 2012 WL 6562764, at *8 (generally alleging defamation and providing insufficient particularity to demonstrate a good faith claim for damages); *Davidson-Nadwodny*, 2008 WL 2415035, at *5 (referring only to "the aforementioned false and defamatory statements" without providing the content of the statements). Several of the cases involved multiple defendants, without identifying which defendant was responsible for particular statements. *See Cofield*, 2013 WL 5308278, at *7; *Davidson-Nadwodny*, 2008 WL 2415035, at *5. In *Brown*, the plaintiffs were unable to ascertain with certainty whether a defamatory

statement was even made. *Brown*, 2012 WL 6185310, at *3. Instead, the plaintiffs suspected that the defendant made a defamatory statement based on inferences drawn from the circumstances. *Id.* Here, Ruyter points to a statement made by CVS to the Unemployment Insurance Division, buttressed by an exhibit that indicates that the statement was made and supported by a series of allegations that show how CVS could believe the statement to be false. Accordingly, Ruyter sufficiently states a claim for defamation.

B. **Qualified Privilege**

In the defamation context, when a defendant asserts that a statement is privileged, the Court must consider whether the privilege applies. *Piscatelli*, 35 A.3d at 1147. The Maryland Code establishes a conditional privilege that protects certain communications made to the Unemployment Insurance Division, so long as they are not false and malicious:

> Unless a report or other written or oral communication that is made or delivered in connection with this title is false and malicious, a person may not bring an action for . . . libel, or slander based on the report or communication from an employee or an employer to the [Division].

Md. Code. Ann., Lab. & Empl. § 8-105. Thus, an employer's statements to the Unemployment Insurance Division, like the one at issue here, are privileged and cannot form the basis of a defamation suit unless they are false and malicious. *See Gay v. William Hill Manor, Inc.*, 536 A.2d 690, 693 (Md. Ct. Spec. App. 1988); *Comber v. Prologue, Inc.*, No. JFM-99-2637, 2000 WL 1481300, at *9 (D. Md. Sept. 28, 2000).

There are indications that CVS's statement was not malicious. When the Division conducts an investigation to determine whether an employee qualifies for unemployment insurance benefits, among the information that the employer is required to provide is the reason for the employee's separation from employment. *See* Md. Code Regs. 09.32.02.05 (West 2015) ("When a claimant files a new claim, the Secretary shall request separation information from the

claimant's base period employers . . . . Each employer shall indicate on a separation note the reason for the claimant's separation from employment."). The determination letter that Ruyter attached to the Complaint suggests that, in disclosing the reason for her termination, CVS was merely complying with that requirement. *See* 1st Am. Compl. Ex. B. At the very least, it is certainly true that CVS suspected Ruyter of being involved in the missing deposit, and it would not be false to communicate that suspicion as the official reason for her termination in compliance with state regulations. On the other hand, Ruyter's allegations in the Complaint, including the Division's statement that CVS failed to substantiate its claims to the Division, *see* 1st Am. Compl. Ex. B, support the inference that CVS had only thin evidence implicating Ruyter in the deposit's disappearance and therefore may have acted with reckless disregard.

A motion to dismiss "does not generally invite an analysis of potential defenses to the claims asserted in the complaint." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd., P'ship*, 213 F.3d 175, 195 (4th Cir. 2000). Thus, the determination as to whether CVS's statements were false and malicious should not be made at the motion to dismiss stage unless "the complaint clearly reveals the existence of a meritorious affirmative defense." *Id.*; *see also Comber*, 2000 WL 1481300, *9 (making the determination as to whether an employer's statement to the Unemployment Insurance Division was malicious at the summary judgment stage); *Gay*, 536 A.2d at 693 (making the determination at the stage of a motion for judgment notwithstanding the verdict). It is not sufficiently clear from the Complaint or the exhibits whether CVS acted with malice in disclosing to the Unemployment Insurance Division its allegations against Ruyter. The Court therefore declines to dismiss Ruyter's claim on this ground, and CVS's Motion is denied as to the defamation claim.

## CONCLUSION

For the foregoing reasons, and as stated in a separate order, CVS's Partial Motion to Dismiss Counts I and III of the First Amended Complaint, ECF No. 12, is GRANTED in part and DENIED in part. Count I of the First Amended Complaint is dismissed without prejudice. The Motion is denied as to Count III.

Date: February 20, 2015

THEODORE D. CHUANG
United States District Judge